1

2

3

4

5

6

7

8          # UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11   BARBARA LUGO,                          Case No.  1:11-cv-01744-SAB

12                    Plaintiff,            **ORDER RE: SOCIAL SECURITY APPEAL**

13          v.

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                     Defendant.
16

17

18          Plaintiff Barbara Lugo ("Plaintiff") filed this action seeking judicial review of the final

19   decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner")

20   denying Plaintiff's application for benefits under the Social Security Act.  (ECF No. 1.)   All

21   parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes.

22   (ECF Nos. 8, 9.)   For the reasons set forth below, Plaintiff's appeal from the administrative

23   decision of the Commissioner of Social Security is denied.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1

# I.

2

## FACTUAL AND PROCEDURAL BACKGROUND[1]

3      Plaintiff protectively applied for Supplemental Security Income ("SSI") benefits on

4   November 7, 2007.  (AR 29.)  Plaintiff's application was initially denied on April 18, 2008 and

5   then denied upon reconsideration on August 8, 2008.  (AR 29.)  Plaintiff filed a written request

6   for a hearing, which took place on April 2, 2010 before Administrative Law Judge Howard K.

7   Treblin ("the ALJ").  (AR 29.)  The claimant was represented at the hearing before the ALJ by

8   attorney Jeffrey R. Duarte.  (AR 29.)  On May 27, 2010, the ALJ issued his determination that

9   Plaintiff was not disabled.  (AR 29-38.)  The Appeals Council denied Plaintiff's request for

10  review on August 19, 2011.  (AR 1.)

11     **A.     Plaintiff's Hearing Testimony**

12     Plaintiff was 44 years old at the time of the hearing on April 2, 2010.  (AR 49.)  The last

13  grade of school that Plaintiff completed was eleventh grade.  (AR 50.)  Plaintiff does not have a

14  GED.  (AR 50.)  The last time Plaintiff worked was in 1993.  (AR 51.)  Plaintiff worked in a

15  warehouse, in retail and in fast food.  (AR 51.)

16     Plaintiff testified that she had difficulty working due to problems associated with walking

17  and lifting, lower back pain, anxiety, depression and difficulty breathing.  (AR 52.)  Plaintiff

18  recently learned that she suffers from fibromyalgia.  (AR 52.)  Plaintiff takes medication for her

19  pain, including Amitriptyline.  (AR 53-54.)

20     Plaintiff testified that she can lift less than 10 pounds, sit about a half hour at a time, and

21  was not sure how long she could walk or stand.  (AR 53.)  Plaintiff stated she has difficulty

22  bending over, concentrating and remembering things.  (AR 53.)

23     Plaintiff is currently living in a house with her mother.  (AR 54.)  Plaintiff spends most of

24  the day lying down.  (AR 54.)  Plaintiff "tr[ies] to do what [she] can" around the house, such as

25  cleaning, laundry and grocery shopping.  (AR 54-55.)

26  / / /

27
28  ---
[1] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record).  Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript.  (See ECF No. 11.)

When questioned by her attorney, Plaintiff testified that she has not been seen by a doctor since November 2009[2] because her husband lost his medical insurance at the end of 2009.  (AR 56.)  Prior to losing insurance, Plaintiff saw several doctors and reported her problems with concentration and pain.  (AR 56-57.)  Plaintiff suffers from pain "[a]ll the time."  (AR 57.)  Plaintiff cannot lift her legs, feels unbalanced and has problems falling down.  (AR 57.)  Plaintiff's doctors told her that she has peripheral neuropathy.  (AR 57.)  Plaintiff has had these problems since 1999.  (AR 58.)

### B.    Plaintiff's Medical Records

On April 11, 2006, Plaintiff was seen by a treating physician, Dr. Heather Cohen Henri, M.D, for her hypothyroidism.  (AR 193-194.)  Plaintiff complained of "occasional fatigue."  (AR 193.)  Plaintiff also complained of "bilateral knee and hand joint pain, mostly when the weather is cold."  (AR 193.)  Dr. Henri's impression was that Plaintiff's joint pain was likely due to mild osteoarthritis.  (AR 194.)

On January 11, 2006, Plaintiff was seen by Dr. Henri for a follow up relating to her hypothyroidism.  (AR 191-192.)  Dr. Henri noted that Plaintiff was "very pleasant, alert and oriented x4 and in no acute distress.  Thought process is linear and goal directed."  (AR 191.)  Dr. Henri noted Plaintiff's "history of depression" and referred her to "Psychiatry."  (AR 192.)

On November 16, 2007, Plaintiff was seen again by Dr. Henri.  (AR 189-190, 195-196.)  Plaintiff sought treatment due to difficulty walking.  (AR 189.)  Plaintiff informed Dr. Henri that Plaintiff has been unable to walk since 1998, after she received iodine treatment for hyperthyroidism.  (AR 189.)  Since then, Plaintiff could only walk approximately 20 feet.  (AR 189.)  She has been evaluated since then, which included an MRI of her legs.  (AR 189.)  However, doctors were unable to provide Plaintiff with a diagnosis.  (AR 189.)  Dr. Henri's physical examination noted that Plaintiff needed assistance taking off her shoes and took "8 times normal duration" to get up out of a chair, and that she "does this with an unsteadiness."  (AR 189.)  Otherwise, Plaintiff was able to get on and off the examining table and out of her chair

---

[2] However, Plaintiff did go to the emergency room between November 2009 and the date of the hearing before the ALJ because she was having anxiety attacks.  (AR 56.)

1    without assistance.  (AR 189.)  Dr. Henri "g[ave Plaintiff] a note stating that she is currently

2    permanently disabled."  (AR 190.)

3        On February 20, 2008, Plaintiff received a comprehensive internal medicine evaluation

4    from examining physician Dr. Miguel Hernandez, M.D.  (AR 199-203.)  Dr. Hernandez

5    apparently did not have access to Plaintiff's medical records, because he noted that "[t]here are no

6    medical records for ... review." (AR 199.)  Dr. Hernandez listed Plaintiff's three chief complaints

7    as "[a]rthritis of hands knees and ankles," "[d]epression," and "[h]ypothyroidism."  (AR 199.)

8    Plaintiff informed Dr. Hernandez that "she is getting more depressed," "cannot go out grocery

9    shopping because she gets tired and [because of the] pain in all her joints," "cannot pick up things

10    ... like pots and pans, a gallon of milk, or even grooming her dog or brushing her own hair,"

11    "cannot ... stand walking outside because her pain hurts her legs," and "from time to time will

12    need assistance in dressing and bathing from her husband."  (AR 199-200.)  Dr. Hernandez

13    further noted that Plaintiff was "in no apparent distress," "walked into the room without any

14    difficulty," and "sits on the examination table with no problems."  (AR 200.)  Dr. Hernandez

15    further noted no deformities or swelling in Plaintiff's wrists and "no tenderness to palpation over

16    the carpal bones, distal ulnas and radius as well as any of the palanges." (AR 201-202.)  Plaintiff

17    "had good generalized muscle tone throughout both upper and lower extremities bilaterally,"

18    "motor strength was 5/5 throughout both upper and lower extremities bilaterally," and when using

19    grip strength testing using the Jamar, Plaintiff achieved about 40 pounds of pressure bilaterally.

20    (AR 202.)

21        Dr. Hernandez diagnosed Plaintiff with generalized osteoarthritis, major depression and

22    hypothyroidism.  (AR 202.)  Dr. Hernandez stated that Plaintiff could be expected to stand and

23    walk for about six hours with routine breaks in an eight hour work day, did not need any assistive

24    devices, and could lift and carry 20 pounds on an occasional basis and 10 pounds on a frequent

25    basis.  (AR 202.)  Dr. Hernandez further stated that Plaintiff appeared to have no postural

26    limitations or manipulative limitations.  (AR 202.)

27        On March 6, 2008, non-examining physician Dr. Sadda V. Reddy prepared a case analysis

28    for Plaintiff.  (AR 204-206.)  Dr. Reddy examined Plaintiff's medical record and concluded that

there were no limitations related to Plaintiff's hypothyroidism, which was controlled with medication.  (AR 206.)  Dr. Reddy concluded that Plaintiff's testimony regarding her difficulty walking and joint pain was inconsistent with the objective medical record and the fact that Plaintiff was not taking any medication for joint pain.  (AR 206.)  Dr. Reddy concluded that a light RFC would be appropriate and that Plaintiff's examination was essentially normal.  (AR 206.)

On March 15, 2008, Plaintiff was seen by examining psychiatrist James Scaramozzino, PhD.  (AR 207-212.)  Dr. Scaramozzino noted that there did not appear to be any evidence that Plaintiff was exaggerating symptoms and there was no indication of inconsistencies throughout the evaluation.  (AR 211.)  Plaintiff is able to manage her own funds.  (AR 211.)  Dr. Scaramozzino concluded that Plaintiff is moderately impaired in her ability to:

- understand and remember very short and simple instructions;
- understand and remember detailed instructions;
- maintain concentration and attention;
- accept instructions from a supervisor and respond appropriately;
- sustain an ordinary routine without supervision;
- complete a normal workday and workweek without interruptions at a constant pace;
- interact with coworkers; and
- deal with various changes in the work setting.

(AR 211-212.)  Dr. Scaramozzino also noted a fair likelihood that Plaintiff would emotionally deteriorate in the work environment.  (AR 212.)  Plaintiff was also moderately impaired in her daily activities.  (AR 212.)

On March 27 2008, Robert H. Blum, Ph.D completed a Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment form for Plaintiff.  (AR 213-229.) Plaintiff was found to be moderately limited in maintaining social functioning and maintaining concentration, persistence or pace.  (AR 223.)  Plaintiff was mildly limited in activities of daily living.  (AR 223.)  Plaintiff did not suffer from any episodes of decompensation of extended duration.  (AR 223.)  Dr. Blum noted that Plaintiff's history of psychological treatment was brief,

that she was not currently on any treatment or on any psychotropic medication.  (AR 225.) Plaintiff did not follow through with a psychiatry services referral.  (AR 225.)  Dr. Blum did not concur with the examining psychologist's opinion that Plaintiff was moderately impaired in understanding and remembering very short and simple instructions because there were no deficits in attention, concentration or memory.  (AR 225.)  Dr. Blum concurred with the conclusion that Plaintiff was moderately impaired in carrying out detailed instructions.  (AR 225.)  Dr. Blum did disagree with the conclusion that Plaintiff was moderately impaired in accepting instructions from a supervisor because there was no objective evidence for that conclusion and Plaintiff stated that she was "okay" with authority figures.  (AR 225.)  Dr. Blum opined that Plaintiff would probably have difficulty working in a setting requiring a high degree of coordination with coworkers and would have difficulty dealing with the public.  (AR 225.)  Dr. Blum concluded that Plaintiff's "psychological factors would reduce her capacities to perform competitive level work but not entirely preclude them."   (AR 225.)   In Plaintiff's Mental Residual Functional Capacity Assessment, Plaintiff was found to be moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions and the ability to interact appropriately with the general public.  (AR 227-228.)  Plaintiff was "Not Significantly Limited" in all other categories.  (AR 227-228.)

On July 25, 2008, non-examining physician Dr. Ernest Wong, M.D. prepared a case analysis.  (AR 240-241.)  Dr. Wong concluded that Plaintiff's allegations regarding her problems walking were inconsistent with the records that noted that Plaintiff could ambulate without problems.  (AR 240.)  Dr. Wong affirmed Plaintiff's prior RFCs.  (AR 241.)

On August 1, 2008, Harvey Bilik completed a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment.  (AR 242-255.)  Bilik determined that Plaintiff was moderately limited in maintaining social functioning and maintaining concentration, persistence or pace.  (AR 250.)  Bilik checked the boxes for both "Mild" and "Moderate" with respect to Plaintiff's "Degree of Limitation" in "Restriction of Activities of Daily Living."  (AR 250.)  Accordingly, it is not entirely clear which degree applies, or whether Bilik intended to convey a limitation somewhere in between.  In Plaintiff's Mental Residual Functional Capacity

Assessment, Plaintiff was considered "Moderately Limited" in the following categories:

ability to carry out detailed instructions;

- ability to maintain attention and concentration for extended periods;
- ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- ability to sustain an ordinary routine without special supervision;
- ability to work in coordination with or proximity to others without being distracted by them;
- ability to make simple work-related decisions;
- ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a constant pace without an unreasonable number and length of rest periods;
- ability to interact appropriately with the general public;
- ability to accept instructions and respond appropriately to criticism from supervisors;
- ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- ability to respond appropriately to changes in the work setting;
- ability to be aware of normal hazards and take appropriate precautions;
- ability to travel in unfamiliar places or use public transportation; and
- ability to set realistic goals or make plans independently of others.

(AR 253-254.)

Bilik stated that Plaintiff "appears able to understand, remember, and carry out at least simple instructions over the course of a normal workweek.  She can adapt, and can interact appropriately – although a low-stress work setting with limited contact with the general public may be helpful to her."  (AR 255.)  Bilik also noted that Plaintiff may be able to diminish her "psychologically-based symptoms with psychotherapy and/or appropriate RX."  (AR 255.)

On February 19, 2009, Plaintiff was seen by Dr. David R. Chen, M.D.  (AR 398.)  Plaintiff reported pain in the limbs, back and neck and weakness in her limbs.  (AR 398.)

7

1    Plaintiff reported difficulty doing her hair and making and washing her dog due to severe pain
2    and weakness in her arms.  (AR 398.)  Plaintiff also reported that she recently helped a friend
3    move and, while carrying a box, she was unable to lift her legs to climb the stairs and felt like
4    they were going to give out.  (AR 398.)  Plaintiff stated that her symptoms fluctuate with some
5    days much worse than others. (AR 398.)  Plaintiff complained of headaches, depression and poor
6    sleep.  (AR 398.)  On examination, Plaintiff's motor strength was "5/5 with normal tone and
7    bulk" and reflexes were normal.  (AR 398.)   The sensory exam was notable for decreased
8    sensation to pinprick and light touch in the feet and about 2/3 of the way up the calves.  (AR 398.)
9    Dr. Chen noted that Plaintiff's subjective reports of pain and weakness was contrasted with her
10   normal motor exam.  ("AR 398.)

11      On May 26, 2009, Plaintiff was seen by treating physician Veronica U. David.  (AR 318-
12   326.)  Plaintiff complained of dark spots on her face and upper extremities associated with
13   prolonged sun exposure.  (AR 318.)  Plaintiff also complained of pain in her extremities, with the
14   left upper extremity being the worst.  (AR 318.)

15      On June 10, 2009, Plaintiff was seen by treating physician Shirin M. Ahmad, M.D.  (AR
16   306-317.)  Plaintiff was seen for evaluation and treatment of arthralgias.  (AR 306.)  Plaintiff
17   reported trouble sleeping and was only sleeping 2-4 hours at night.  (AR 306.)  Plaintiff also
18   noted her history of depression, numbness and tingling in her bilateral lower extremities, her
19   history of miscarriages due to trauma and "cold distal extremities."  (AR 307.)  Dr. Ahmad
20   ordered Plaintiff to return in two weeks after conducting some tests and requesting Plaintiff's old
21   records.  (AR 309.)

22      On July 14, 2009, Plaintiff was seen again by Dr. Ahmad.  (AR 303-305.)  Plaintiff was
23   seen for a follow up and reported sleeping better with medication, which held some of her pain.
24   (AR 303.)  Plaintiff still had trouble with depression and anxiety, but reported improving with her
25   new medication.  (AR 303.)  Plaintiff was diagnosed with fibromyalgia.  (AR 304.)  Plaintiff was
26   counseled on "sleep hygiene and participating in a regular exercise program."  (AR 304.)
27   Plaintiff continued to be prescribed flexeril and was advised to follow up with her primary care
28   physician for further treatment of her depression and anxiety.  (AR 304.)

1    On August 4, 2009, Plaintiff was seen again by Dr. David.  (AR 299-302.)  Plaintiff came

2    for a follow up visit and complained of "continuous spotting in between periods."  (AR 299.)

3    Plaintiff also reported that her depression has not improved and that she was having anxiety

4    attacks.  (AR 299.)  Plaintiff was prescribed medication, advised to go on a low carbohydrate diet

5    and exercise, to increase water intake, and was referred to a gynecologist.  (AR 301.)

6    On September 2, 2009, Plaintiff was seen by treating physician Dr. Christopher Domush,

7    M.D.  (AR 294-298.)  Plaintiff came in for an annual exam and complained of vaginal bleeding

8    every other week and painful cramping.  (AR 294-295.)  There was no mention of pain or

9    difficulty walking in the medical report.

10    On September 24, 2009, Plaintiff was seen again by Dr. David.  (AR 290-293.)  Plaintiff

11    complained of frequent falls due to poor balance.  (AR 290.)  At that time, Dr. David described

12    Plaintiff as a "[w]ell developed, moderately obese, 43 year old, female, in no apparent distress."

13    (AR 292.)  Dr. David referred Plaintiff to Dr. Bettina Harner for "abnormality of gait," advised

14    Plaintiff to adopt a low carbohydrate, low fat and low cholesterol diet and to exercise.  (AR 292.)

15    On October 1, 2009, Plaintiff was seen by treating physician Dr. Bettina P. Harner, M.D.

16    (AR 279-293.)  Plaintiff reported problems falling down and stated that she cannot take a shower

17    or put on shoes/pants without leaning against something.  (AR 283.)

18    On November 4, 2009, Plaintiff was seen by treating physician Dr. Hajra Ismail Tily,

19    M.D.  (AR 270-278.)  Plaintiff was seen "for the evaluation and management of chronic joint

20    pain."  (AR 271.)  Plaintiff complained "of pain from hips all the way down to the feet.  The pain

21    is 9/10."  (AR 271-272.)  Dr. Tily noted "[n]o active arthritis in both upper and lower extremities

22    and good range of motion in these joints.  [Plaintiff] has pain with range of motion and she has

23    fibromyalgia, tender points positive.  On the muscle strength examination, she tends to give way

24    but does not look like she has actual weakness."  (AR 274.)  Dr. Tily's diagnosis included

25    "[f]ibromyalgia with severe fluctuating symptoms" and "[d]epression, anxiety, insomnia mostly

26    contributing toward her active fibromyalgia."  (AR 274.)  Dr. Tily "strongly suggested that

27    [Plaintiff] see a psychiatrist or a psychologist for counseling" because "her main issues seem to

28    be depression and anxiety which is giving the chronic musculoskeletal pain."  (AR 275.)

On April 1, 2010, Dr. David completed a "Physical Residual Functional Capacity Questionnaire." (AR 378-381.)   In the questionnaire, Dr. David indicated that Plaintiff is incapable of performing even "low stress" jobs. (AR 379.)   Dr. David further indicated that Plaintiff cannot walk a single city block without rest or severe pain, can sit 30 minutes at a time, can stand 30 minutes at a time, can sit/stand/walk for less than 2 hours total in an 8 hour work day, must have 15 minute periods of walking around four times a day, must have at least 4 unscheduled 15 minute breaks throughout the work day, and must use a cane or other assistive device. (AR 379-380.)   Dr. David indicated that Plaintiff can only rarely lift and carry less than 10 pounds in a competitive work situation, and can never carry 10 pounds or more. (AR 380.) Plaintiff can only occasionally look down, turn her head right or left, look up or hold her head in a static position. (AR 380.)   Plaintiff can rarely twist, stoop, crouch/squat, or climb stairs and can never climb ladders. (AR 381.)   Plaintiff's impairments are likely to produce "good days" and "bad days," and Plaintiff would likely be absent from work as a result of her impairments or treatments more than four days per month. (AR 381.)

On March 31, 2010, Dr. Michael M. Bronshvag, M.D. examined Plaintiff. (AR 383-387.) Dr. Bronshvag noted that Plaintiff appeared "to be somewhat slowed and forgetful" as well as "depressed." (AR 385.)   Dr. Bronshvag's musculoskeletal examination revealed "discomfort on attempted range of motion of neck, low back, and wrists.  There was tenderness to palpation over both ankles.  No other gross derangements were noted." (AR 385.)   Dr. Bronshvag concluded that Plaintiff "has 'some' impairment of walking and use of legs." (AR 386.)

Dr. Bronshvag opined that Plaintiff's pain would "occasionally" (defined as 6% to 33% of an 8-hour working day) interfere with attention and concentration needed to perform simple work tasks. (AR 389.)   Plaintiff was capable of low stress jobs, could sit 1-2 hours at a time, stand for 30 minutes at a time, sit a total of 6 hours or more in an 8 hour work day, and stand/walk less than 2 hours in an 8 hour work day. (AR 389.)   In response to the inquiries related to "periods of walking around during an 8-hour working day" and unscheduled breaks, Dr. Bronshvag did not respond and instead wrote a question mark, indicating that he did not understand the question. (AR 390.)   Dr. Bronshvag opined that Plaintiff did not need a cane or other assistive device. (AR

390.)  Plaintiff could lift and carry less than 10 pounds in a competitive work situation "rarely" and could never lift or carry 10 pounds or more.  (AR 390.)  Plaintiff could occasionally look down, turn her head right or left, look up and hold her head in a static position.  (AR 390.) Plaintiff could rarely twist, stoop, crouch/squat and climb stairs, but never climb ladders.  (AR 391.)

### C.    The ALJ's Findings

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff has not engaged in substantial gainful activity since November 7, 2007;

- Plaintiff has the following severe impairments: depression, hypothyroidism status post prior history of thyroid cancer, generalized osteoarthritis at multiple sites, and eczema.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

- Plaintiff has the residual functional capacity to perform light work and is limited to simple repetitive tasks in a low stress setting with limited public contact;

- Plaintiff has no past relevant work;

- Considering Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; and

- Plaintiff has not been under a disability, as defined in the Social Security Act, since November 7, 2007, the date her application was protectively filed.

(AR 31-37.)

**II.**

**LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY DETERMINATIONS**

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

1    disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v.

2    Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).   "Substantial evidence" means more than a scintilla,

3    but less than a preponderance.   Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal

4    quotations and citations omitted).   "Substantial evidence is 'such relevant evidence as a

5    reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Richardson v.

6    Perales, 402 U.S. 389, 401 (1971)).   "[A] reviewing court must consider the entire record as a

7    whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill,

8    698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

9    However, it is not this Court's function to second guess the ALJ's conclusions and substitute the

10   Court's judgment for the ALJ's.   See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)

11   ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's

12   conclusion that must be upheld.")

**III.**

**DISCUSSION AND ANALYSIS**

15   Plaintiff contends that the ALJ erred (A) in his analysis of Plaintiff's residual functional

16   capacity ("RFC"), and (B) in his analysis of Plaintiff's credibility.

**A.       The ALJ's Analysis Of Plaintiff's RFC**

18   Plaintiff contends that the ALJ erred in his analysis of Plaintiff's RFC because (1) the ALJ

19   failed to give proper deference to Plaintiff's treating physician, Dr. Veronica David, (2) the ALJ

20   failed by concluding that Plaintiff had an RFC to perform light work, (3) the ALJ erred by

21   adopting Dr. Hernandez's opinion with respect to Plaintiff's RFC, and (4) the ALJ failed to obtain

22   an updated opinion by a medical advisor in light of the new evidence added to Plaintiff's file after

23   State agency medical consultants reviewed Plaintiff's case in 2008.

**1.       The ALJ Did Not Err In His Treatment Of Dr. Veronica David's Opinion**

25   Plaintiff argues that the medical opinions of her treating physician, Dr. Veronica David,

26   indicate that Plaintiff's physical RFC does not permit Plaintiff to perform the full range of

27   sedentary work, which is far more limited than the light work RFC established by the ALJ.  (Pl.'s

28   Opening Brief 6:25-9:2.)   Plaintiff argues that, as Plaintiff's treating physician, Dr. David's

1   opinions should be afforded controlling weight or at least greater weight than opinions from other

2   sources.  (Pl.'s Opening Brief 7:22-8:16.)  Specifically, Plaintiff contends that the ALJ erred by

3   failing to give due consideration to Dr. David's April 1, 2010 RFC questionnaire.  (Pl.'s Opening

4   Brief 8:17-22.)

5       **a.       Legal Standards Applicable To The Treatment Of Medical Opinion Evidence**

6           "By rule, the Social Security Administration favors the opinion of a treating physician

7   over non-treating physicians."  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R.

8   § 404.1527).  "If a treating physician's opinion is 'well-supported by medically acceptable

9   clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

10  evidence in [the] case record, [it will be given controlling weight.'"  Id. (quoting 20 C.F.R. §

11  404.1527(d)(2)).  If a treating physician's opinion is not given 'controlling weight' because it is

12  not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the

13  Administration considers specified factors in determining the weight it will be given."  Id.  These

14  factors include (1) the length of the treatment relationship and the frequency of examination by

15  the treating physician; (2) the nature and extent of the treatment relationship between the patient

16  and the treating physician; (3) the amount of relevant evidence that supports the opinion and the

17  quality of the opinion provided; (4) the consistency of the medical opinion with the record as a

18  whole; (5) the specialty of the physician providing the opinion; (6) the degree of understanding a

19  physician has of the Administration's disability programs and their evidentiary requirements; and

20  (7) the degree of his or her familiarity with other information in the case record.  Id. (citing 20

21  C.F.R. § 404.1527.)

22          A determination that a treating physician's opinion is not well-supported or is inconsistent

23  with other substantial evidence does not mean that the opinion should be rejected.  Id. at 631-32

24  (quoting SSR 96-2p).  Treating source medical opinions are still entitled to deference and must be

25  weighed using all of the factors identified above, and in many cases a treating physician's opinion

26  should be adopted even if it does not meet the test for controlling weight.  Id. (quoting SSR 96-

27  2p).

28  / / /

If a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Id. at 632 (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Id. (quoting Reddick, 157 F.3d at 725). "'This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings.'" Id. (quoting Reddick, 157 F.3d at 725).

If an examining physician relies on the same clinical findings as a treating physician, but differs only in his conclusions, the conclusions of the examining physician do not constitute "substantial evidence" justifying rejection of the treating physician's conclusions. Id. However, if the examining physician provides independent clinical findings that differ from the findings of the treating physicians, those findings may constitute "substantial evidence." Id. (citing Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985). "Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence ... or (2) findings based on objective medical tests that the treating physician has not considered." Id. (citing Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)).

**b.      The ALJ Properly Afforded Limited Weight To Dr. David's Medical Opinions**

In this case, the ALJ concluded that Dr. David's medical opinion "is not afforded any significant weight as this opinion conflicts with the evidence of record, including her reported activities of daily living, documenting less severe limitations." (AR 33.) Moreover, Dr. David "did not adequately consider the entire record, including statements of collateral sources and the objective findings of other treating physicians and examining physicians." (AR 33.)

The medical opinions in question are those expressed in Dr. David's RFC questionnaire dated April 1, 2010. Dr. David treated Plaintiff on May 26, 2009, on August 4, 2009 and on September 24, 2009. (AR 290-293, 299-302, 318-326.) Dr. David completed Plaintiff's RFC questionnaire on April 1, 2010, but it is unclear whether Dr. David examined Plaintiff that day, or

1   whether her opinions were based upon Dr. David's findings in 2009.  (AR 378-381.)

2        Here, Dr. David's medical opinion is contradicted by both examining doctors that

3   expressed an opinion regarding Plaintiff's physical RFC—Drs. Hernandez and Bronshvag.  Dr.

4   David's RFC opinion is also contradicted by the non-examining doctors who expressed an

5   opinion regarding Plaintiff's RFC based upon their review of the medical record—Drs. Reddy

6   and Wong.  Moreover, Dr. David's opinion does not appear to be consistent with <u>any</u> of the other

7   medical reports by other treating physicians, such as Drs. Henri, Ahmad, Domush, Harner and

8   Tily.  These doctors did not express their opinions using the RFC terminology used in the Social

9   Security setting.  However, one would expect that, had these doctors believed that Plaintiff

10  suffered from the profound degree of limitation expressed in the RFC report authored by Dr.

11  David, some reference to Plaintiff's limitations would have been present in their reports.  On the

12  contrary, nothing else in the medical record suggests that Plaintiff suffers from the profound level

13  of impairment reflected in Dr. David's April 1, 2010 RFC questionnaire.  In terms of the severity

14  of Plaintiff's impairments, Dr. David's opinions are remarkably inconsistent with the rest of the

15  record.  For example, with respect to how long Plaintiff could sit in an 8 hour workday, Dr. David

16  checked the most restrictive box: "less than 2 hours."  (AR 380.)  In contrast, Dr. Bronshvag

17  checked the least restrictive box: "at least 6 hours."  (AR 390.)

18       The opinions expressed in Dr. David's April 1, 2010 RFC questionnaire appear to be

19  based entirely upon her own examination of Plaintiff because the questionnaire contains no

20  discussion or reference to any other medical records.  Accordingly, although Drs. Hernandez and

21  Bronshvag were non-treating examining physicians, their conclusions were based upon

22  independent clinical findings.  Therefore, these conclusions may serve as substantial evidence

23  justifying the rejection of Dr. David's opinion.  <u>Orn</u>, 495 F.3d at 632.

24       Further, the opinions expressed in Dr. David's RFC questionnaire do not appear to be

25  consistent with Dr. David's own three examinations of Plaintiff, which failed to note any

26  impairments as severe as those expressed in the RFC questionnaire.  See <u>Johnson v. Shalala</u>, 60

27  F.3d 1428, 1432-33 (9th Cir. 1995) (rejecting "retrospective" conclusions from a treating

28  physician when they were inconsistent with the same doctor's prior conclusions).  For example,

1   during Plaintiff's visit on September 2, 2009, Dr. David noted that Plaintiff was "Negative" in all

2   systems, other than the "Genitourinary" and "Endocrine" systems where Dr. David noted

3   Plaintiff's "[i]rregular menses, dysmenorrhea" and "[h]ot flashes."  (AR 296.)  With respect to

4   Plaintiff's musculoskeletal issues, Dr. David noted that Plaintiff's muscle strength and tone were

5   normal and symmetrical.  (AR 296.)

6        Moreover, Dr. David's opinions are inconsistent with Plaintiff's activities of daily living.

7   During a February 19, 2009 medical visit, Plaintiff reported that she recently helped a friend

8   move and attempted to carry a box.  (AR 398.)  Although Plaintiff reported that she suffered pain

9   during that incident, one would expect that a person suffering from the severe limitations

10  reflected in the April 1, 2010 RFC questionnaire would not even attempt to help a friend move or

11  carry a moving box.  Plaintiff also reported that she goes grocery shopping with her mother (AR

12  55), which is inconsistent with Dr. David's opinion that Plaintiff cannot walk even a single city

13  block without rest or severe pain (AR 379).

14       Additionally, Dr. David's questionnaire contains no narrative or discussion of any clinical

15  findings.  "The ALJ need not accept the opinion of any physician, including a treating physician,

16  if that opinion is brief, conclusory, and inadequately supported by clinical findings."  Thomas v.

17  Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).   Dr. David's RFC questionnaire was brief,

18  conclusory and inadequately supported by clinical findings.

19       None of the seven factors identified in Orn suggest that Dr. David's opinions should be

20  afforded significant weigh.  Factors one (length/frequency of the treatment relationship) and two

21  (nature and extent of the treatment relationship) do not weigh in favor of granting Dr. David's

22  opinion substantial weight.  Plaintiff only saw Dr. David on three occasions over a four month

23  duration.   The records pertaining to the first two visits with Dr. David do not mention any

24  problems related to walking, sitting, lifting or carrying.   Factors three (amount of relevant

25  evidence supporting the opinion and the quality of opinion provided) and four (consistency of the

26  medical opinion with the record as a whole) also favor affording limited weight to Dr. David's

27  opinion.  As discussed above, Dr. David's opinion was not consistent with the objective evidence

28  and the remainder of the medical record and the quality of the opinion was low, as it was brief,

16

conclusory and contained no narrative or discussion of the clinical findings.  There is no evidence that Dr. David's opinion should be afforded particular weight under the fifth factor (specialty of the physician providing the opinion), as it is unclear what Dr. David's specialty is.  Factor six (degree of understanding the physician has of the Administration's disability programs) do not support Dr. David's opinion, as there is no indication that she had familiarity with Social Security issues.  Finally, the seventh factor (degree of familiarity with other information in the case record) does not support Dr. David's opinion, as there is no indication that Dr. David considered the record as a whole when authoring the RFC questionnaire.

Accordingly, the Court finds that the ALJ did not err by affording limited weight to Dr. David's opinions.

2. The ALJ Did Not Err By Concluding That Plaintiff Had The RFC To Perform Light Work

Plaintiff argues that the ALJ erred in his assessment of Plaintiff's RFC because the light work RFC was inconsistent with the opinions of Drs. David and Bronshvag.  (Pl.'s Opening Brief 9:3-15:2.)

Plaintiff's brief discusses how Dr. David and Dr. Bronshvag's opinions supported a conclusion that Plaintiff's RFC should have been for less than sedentary work.  As discussed supra, Part III.A.1, the ALJ did not err by failing to adopt Dr. David's opinion.  Moreover, it is not the Court's function to reverse the ALJ's decision simply because evidence supporting an alternative conclusion exists in the record.  See Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001).  Accordingly, identifying conflicting evidence is not sufficient to warrant reversal.

However, the conflicting evidence is relevant in determining whether the ALJ erred by adopting the opinion of Dr. Hernandez, which is discussed infra, Part III.A.3.

3. The ALJ Did Not Err By Adopting Dr. Hernandez's Opinion With Respect To Plaintiff's RFC

Plaintiff argues that the ALJ erred by adopting the opinion of Dr. Hernandez.  (Pl.'s Opening Brief 15:3-16:21.)

/ / /

17

1    Plaintiff argues that the ALJ's reliance on Dr. Hernandez's opinion is flawed because Dr.

2    Hernandez was a non-examining physician.  (Pl.'s Opening Brief 15:14-17.)  This assertion is

3    false.  Dr. Hernandez examined Plaintiff on February 20, 2008.  (AR 199-203.)

4    Plaintiff next argues that Dr. Hernandez's opinion is flawed because there is no indication

5    that Dr. Hernandez reviewed any of the other medical evidence in the case.  (Pl.'s Opening Brief

6    16:5-6.)  This assertion is confirmed by Dr. Hernandez's report, which expressly states that there

7    were no other medical records to review.  (AR 199.)  However, Plaintiff fails to cite any authority

8    that suggests that the ALJ commits reversible error by adopting the opinion of an examining

9    physician whose conclusions are based on first hand examination but did not review the

10    remainder of the record.

11    Finally, Plaintiff argues that Dr. Hernandez's opinion was stale because his report is dated

12    February 20, 2008.  (Pl.'s Opening Brief 16:7-13.)  Plaintiff further claims that her condition

13    deteriorated since then, which would have been taken into consideration by Drs. David and

14    Bronshvag, who examined Plaintiff on in 2009 and 2010.  (Pl.'s Opening Brief 16:7-13.)

15    Again, Plaintiff fails to cite any authority for the proposition that it constitutes legal error

16    for the ALJ to adopt the opinion of an examining physician whose opinion is older than those

17    rendered by another physician.  With respect to the "staleness" of Dr. Hernandez's opinion, the

18    Court finds that a 1-2 year difference does not raise any serious questions regarding the reliability

19    of those opinions, particularly in the absence of any objective evidence suggesting that Plaintiff's

20    condition had changed substantially during that period.   Although Plaintiff subjectively

21    characterizes her condition as one that is continuously deteriorating over time, the Court finds that

22    such testimony was properly afforded limited weight in light of the ALJ's credibility

23    determination with respect to Plaintiff.  See discussion infra Part III.B.  Accordingly, the Court

24    finds that the ALJ's actions in adopting a medical opinion 1-2 years older than the other medical

25    opinions on file does not constitute reversible error.

26    Although Plaintiff identifies many individual factors that would weigh in favor of

27    adopting Dr. David or Dr. Bronshvag's opinions, this Court's inquiry is limited to determining

28    whether substantial evidence supported the ALJ's decision to adopt Dr. Hernandez's opinion.  "If

the evidence can support either outcome, we may not substitute our judgment for that of the ALJ." Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (citing Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).  The Court must consider the record as a whole, not just the evidence cited by Plaintiff.  Hill, 698 F.3d at 1159 (quoting Robbins, 466 F.3d at 882).

Here, the ALJ properly afforded limited weight to the opinions of Dr. David for the reasons set forth above.  See discussion, supra, Part III.A.1.  With respect to Dr. Bronshvag's opinions, the ALJ stated:

> The one time examination was ordered by the claimant's attorney and his opinions are not well supported; the limitations are not backed by citations to medical signs and laboratory results as required by SSR-96-4p.  Dr. Bronshvag's opinions are inconsistent with the totality of the evidence, including the claimant's acknowledged activities and the opinions of Dr. Hernandez ... and the State agency physicians.  For these clear and convincing reasons ... the undersigned finds Dr. Bronshvag's opinions are neither persuasive nor controlling.

(AAR 34.)

The Court finds that the ALJ cited specific and legitimate reasons to afford limited weight to Dr. Bronshvag's opinions and adopt Dr. Hernandez's opinions.  Since both Dr. Bronshvag and Dr. Hernandez were examining doctors, neither opinion is per se entitled to greater weight and the ALJ "'must determine credibility and resolve the conflict.'"  Valentine v. Commissioner of Social Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (quoting Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002)).

Dr. Hernandez's opinions regarding Plaintiff's physical limitations were corroborated by non-examining physicians, Drs. Reddy and Wong.  The remaining doctors, Drs. Henri, Ahmad, Domush, Harner and Tily, did not express any opinions that necessarily supported or contradicted Dr. Hernandez's opinions or Dr. Bronshvag's opinions.  The records for Plaintiff's visits with these doctors mention some physical limitations and describe Plaintiff's subjective reports regarding her own limitations, but otherwise these reports do not clearly favor Dr. Bronshvag's opinions over Dr. Hernandez's opinions.

The Court also notes that Plaintiff's acknowledged activities are more in line with Dr. Hernandez's opinions regarding Plaintiff's RFC.  In particular, Plaintiff's report that she helped a

1   friend move and attempted to carry a box during that process suggests that Plaintiff would be

2   capable of performing light work, rather than be limited to sedentary work. (See AR 398.)

3   Furthermore, Plaintiff reported that she goes grocery shopping with her mother (AR 55), which is

4   not consistent with Dr. Bronshvag's opinion that Plaintiff can, at most, walk a single city block

5   without rest or severe pain. (AR 389.)

6        Based on the foregoing, the Court finds that the ALJ's analysis was proper and supported

7   by substantial evidence. Accordingly, the ALJ did not err by adopting the opinion of Dr.

8   Hernandez.

9        4.    The ALJ Did Not Err By Failing To Obtain An Updated Opinion From A Medical
             Advisor
10

11       Plaintiff argues that the ALJ erred by failing to obtain an updated opinion by a medical

12  advisor in light of the new evidence added to Plaintiff's file after the State agency medical

13  consultants reviewed her case. (Pl.'s Opening Brief 16:22-17:21.) Plaintiff contends that the ALJ

14  was required to update the record pursuant to Social Security Ruling 96-6p.

15       Social Security Ruling 96-6p states, in pertinent part:

16              ...an administrative law judge ... must obtain an updated medical
                opinion from a medical expert in the following circumstances:
17              When no additional medical evidence is received, but in the opinion
                of the administrative law judge or the Appeals Council the
18              symptoms, signs, and laboratory findings reported in the case record
                suggest that a judgment of equivalence may be reasonable; or
19              When additional medical evidence is received that in the opinion of
                the administrative law judge or the Appeals Council may change
20              the State agency medical or psychological consultant's finding that
                the impairment(s) is not equivalent in severity to any impairment in
21              the Listing of Impairments.

22  SSR 96-6p (emphasis added). Ruling 96-6p is exclusively concerned with the determination

23  made at Step Three of the sequential analysis: whether the claimant's impairment or combination

24  of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part

25  404, Subpart P, Appendix 1. (See 20 C.F.R. § 416.920(d).) The ruling has no applicability to the

26  issues in this case because Plaintiff is challenging the ALJ's RFC determination, which occurs

27  after the Step Three analysis. Plaintiff has not raised any arguments challenging the ALJ's Step

28  Three analysis. Therefore, Ruling 96-6p is inapplicable. See Zamora v. Astrue, 853 F. Supp. 2d

1048, 1060-61 (D. Or. 2011) (SSR 96-6p inapplicable where there is no indication that additional medical evidence would change Step Three analysis concerning equivalence/severity of impairments).

Moreover, the "critical new medical records" cited by Plaintiff do not add any new or additional information that would require the ALJ to obtain updated opinions from the State agency medical consultants.  The records cited by Plaintiff do not document any changed conditions or circumstances that would warrant reexamination by the State agency medical consultants.  Plaintiff fails to identify any relevant information in the "critical new medical records" that was not considered by the State agency medical consultants.

Plaintiff fails to cite any other authority that holds that the ALJ must obtain updated medical opinions in the circumstances present in this case.  The Court is not aware of any such authority.  Accordingly, the ALJ did not err by failing to obtain updated medical opinions from the State agency medical consultants.

### B.      The ALJ's Analysis Of Plaintiff's Credibility

Plaintiff argues that the ALJ erred by failing to make a proper credibility finding as to Plaintiff's testimony.  (Pl.'s Opening Brief 17:22-19:27.)  Plaintiff argues that the ALJ "fail[ed] to provide any direct analysis as to why Plaintiff's credibility was given reduced status."  (Pl.'s Opening Brief 18:22-23.)

With respect to adverse credibility determinations, "the ALJ [is] required to make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'"  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002)).  Assessing the credibility of subjective testimony involves a two-step analysis.  Id.  First, the ALJ determines whether the claimant produced objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom.  Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  Second, if the claimant meets the first threshold and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony about the severity of his/her symptoms only by offering

specific, clear and convincing reasons for doing so.  Id. (quoting Smolen, 80 F.3d at 1281, 1283-84).  Factors relevant in weight a claimant's credibility include "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."  Id. (quoting Smolen, 80 F.3d at 1284).

Here, the ALJ discredited Plaintiff's testimony at step two of the credibility analysis, citing specific, clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of her symptoms.  First, the ALJ found that Plaintiff's testimony regarding the severity of her symptoms was inconsistent with the objective medical evidence.  (AR 34.)  For example, Plaintiff alleged that she could not walk more than 20 feet (AR 189), but the examination conducted by Dr. Hernandez indicated that Plaintiff walked into the examination without any difficulty and had no significant limitations in standing or walking.  (AR 200-202.)  Dr. Wong noted the same inconsistency in his report on July 25, 2008.  (AR 240-241.)  In February 2009, Dr. Chen noted that Plaintiff's subjective reports of pain and weakness contrasted with her "normal" motor exam that day.  (AR 398.)  The ALJ also noted that there was no indication of "significant disuse muscle atrophy, loss of strength, or difficulty moving that is indicative of severe and disabling pain" and "[t]here is no evidence of loss of weight due to loss of appetite due to pain."  (AR 35.)  The ALJ's findings are consistent with the medical record.  (See AR 199-206, 270-326.)

Furthermore, the ALJ noted that there were significant gaps in treatment, indicating that Plaintiff's symptoms are not as serious as alleged.  (AR 34.)  The medical record shows that Plaintiff sought treatment from Dr. Henri in 2006 and early 2007 (AR 189-194) and did not seek treatment again until seeing Dr. Chen in February 2009 (AR 398).  Accordingly, there is an almost two year gap in treatment.

Finally, the ALJ found that Plaintiff's daily activities were inconsistent with the alleged severity of her symptoms.  As discussed above, Plaintiff's subjective testimony that she can lift less than 10 pounds (AR 53) is inconsistent with the fact that she helped a friend move (AR 398).

1   See discussion, supra, Part III.A.1.b.  Plaintiff told a doctor that she could not walk more than 20

2   feet (AR 189), which was inconsistent with her admission that she goes grocery shopping (AR

3   55).   See discussion, supra, Part III.A.1.b.   The ALJ also noted that Plaintiff was able to

4   participate in the administrative hearing without any apparent difficulties.  (AR 35.)

5        Accordingly, the Court finds that the ALJ cited specific, clear and convincing reasons for

6   granting limited weight to Plaintiff's subjective testimony regarding the severity of her

7   impairments.  The Court finds that the ALJ did not err in his analysis of Plaintiff's credibility.

8   **IV.**

9   **CONCLUSION AND ORDER**

10        Based upon the foregoing, the Court finds that the ALJ's analyses were based on the

11   proper legal standards and the ALJ's conclusions are supported by substantial evidence.  The ALJ

12   did not err in assessing Plaintiff's RFC and the ALJ did not err in assessing Plaintiff's credibility.

13        Accordingly, it is HEREBY ORDERED that Plaintiff's appeal from the administrative

14   decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that

15   judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff

16   Barbara Lugo.

17

18

19   IT IS SO ORDERED.

20

21   Dated:   **February 25, 2013**

                                          UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28